STATE OF NEBRASKA EX REL. BERN R. COULTER ET AL., APPELLEES, V. ROBERT D. MCFARLAND, COUNTY JUDGE, APPELLANT.

88 N. W. 2d 892

Filed March 21, 1958. No. 34249.

*Wright, Simmons & Harris,* for appellant.

*Neighbors & Danielson, James L. Macken,* and *Bern R. Coulter,* for appellees.

Heard before CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Morrill County. It involves a mandamus action brought therein by relators Bern R. Coulter, C. Palmer Dunlap, and May D. Anderson against respondent Robert D. McFarland, the then duly elected, qualified, and acting county judge of Morrill County, Nebraska. Thereby relators sought to require respondent to "sign and file in his office in the matter of the estate of Christina D. Dugger, deceased, the Order Fixing Date for Hearing on Will as hereinabove set forth, said order providing that said petition will be heard on the 13th day of May, 1957, at the hour of nine o'clock A. M., and further commanding said respondent forthwith to sign and file in his office in the matter of the estate of Christina D. Dugger, deceased, the Notice of Hearing, which notice notifies all persons interested in said estate that said hearing will be held in the County Court room, Morrill County, Nebraska, on the 13th day of May, 1957, at the hour of nine o'clock A.M. of said day."

The factual background out of which this action had its origin is as follows: Christina D. Dugger, a resident of Morrill County, died on September 21, 1956. She

was thought to have died intestate so two of her heirs at law filed a petition for the administration of her estate in the county court of Morrill County. They were relator May D. Anderson, a niece, of Chehalis, Washington, and Ellen Boyd Yocum, a niece, of Las Vegas, Nevada. Their petition was filed on September 27, 1956, by relator Bern R. Coulter, an attorney at law. Coulter was appointed and qualified to act as administrator of the estate and letters of administration were issued to him on November 5, 1956. These proceedings were had prior to respondent becoming county judge. After respondent became county judge he found an instrument which had been deposited in his office, which instrument appeared to be a will of Christina D. Dugger, deceased. He found it on April 11, 1957. It was dated May 28, 1913. On the same day respondent called relator Coulter on the telephone and advised him of that fact and later that same day permitted Coulter to take the will to his office to make copies thereof and prepare a petition for its probate. Thereafter, at about 11 a.m. on April 18, 1957, Jack E. Lyman and Marvin L. Holscher, attorneys at law, filed a petition in behalf of Agnes D. Lynn of Coopersville, Michigan, a sister of the deceased, asking for the probate of this will and that the court fix a time and place for a hearing for that purpose and to publish the necessary notice thereof as by law required. This the county court did, fixing the time for hearing at 10 a.m. on May 17, 1957, in his office and caused notice thereof to be published accordingly. On the same day (April 18, 1957) at about 4:30 p.m. relator Coulter left with respondent a petition asking to have the will probated, which was signed by the other two relators, and submitted with it two orders for the respondent to sign and file. The first order was captioned as an "Order Fixing Date for Hearing on Will" and the second as a "Notice of Hearing." The first of these orders set the date for hearing at 9 a.m. on May 13, 1957, in the county courtroom and directed the

notice to be published in the Bridgeport News-Blade. The respondent filed the petition but refused to sign the order fixing a time, date, and place for hearing on the application for the allowance of the will and also refused to sign a notice to be published pursuant thereto, entering an order to that effect. This order of refusal was based on the fact that such an order and notice had already been issued. This mandamus action followed immediately, being filed on April 19, 1957.

On April 20, 1957, the district court granted relators the relief they had asked for in the following language: "IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT that a Peremptory Writ of Mandamus issue against the respondent, Robert D. McFarland, County Judge, commanding him to forthwith sign and file in the proceedings of the estate of Christina D. Dugger, deceased, the Order Fixing Date of Hearing on Will and to forthwith sign and file in the proceedings of the estate of Christina D. Dugger, deceased, the Notice of Hearing as set forth in the petition filed herein, and that he deliver to relators a copy of said Notice of Hearing for publication. The costs of this action in the sum of $28.25 are taxed against the respondent."

A writ of mandamus was issued pursuant thereto and served upon respondent. It provided as follows: "Now, therefore, we command you immediately upon receipt of this writ to sign and file in the proceedings in the matter of the estate of Christina D. Dugger, deceased, the Order Fixing Date of Hearing on Will, which order fixes the date of said hearing on the 13th day of May, 1957, at the hour of nine o'clock A.M., and we command you further to immediately upon receipt of this writ to sign and file the Notice of Hearing in the proceedings in the estate of Christina D. Dugger, deceased, said Notice of Hearing fixing the date of hearing on May 13th, 1957, at the hour of nine o'clock A.M., * * *."

Respondent did not comply with the command there-

of. As a result the relators made application for an alias writ, asking that: "* * * the court enter an order allowing Alias Peremptory Writ of Mandamus requiring the respondent to immediately and forthwith enter an order Nunc Pro Tunc as of April 20, 1957, fixing the date of hearing on the petition of May D. Anderson and C. Palmer Dunlap for the probate of the Will of Christina D. Dugger, deceased, and the appointment of Bern R. Coulter as Administrator thereof with Will Annexed, on the 13th day of May, 1957, at the hour of nine o'clock A.M., and that the respondent be further required to immediately and forthwith sign and file a notice of hearing in said proceedings fixing the date of hearing on May 13, 1957, at the hour of nine o'clock A.M., and to deliver a copy of said notice of hearing to relators for publication." On April 27, 1957, an alias peremptory writ of mandamus was ordered to be issued. Therein the district court commanded respondent to comply, nunc pro tunc, with the previous writ issued on April 20, 1957. An alias writ was issued. When respondent still refused to comply therewith he was ordered committed to jail until he did so. It was after this order was issued that respondent complied with the command of the writ, doing so involuntarily. After respondent's motion for new trial had been overruled he took this appeal. We shall herein refer to appellant as respondent and to the individual appellees as relators.

It should be noticed that before he involuntarily complied with the command of the writ that respondent unsuccessfully endeavored to get the district court to fix the amount of bond necessary to supersede the court's judgment, the court holding he was not entitled to supersede, and also unsuccessfully endeavored to get the trial court to suspend enforcement of the jail commitment while he appealed to this court.

There is some dispute between the parties, and conflict in the record, as to just what language was used by the trial court in rendering its order directing the

issuance of an alias peremptory writ of mandamus. However, we do not think this is important because of what is hereinafter held and because, as stated in 3 C. J. S., Alias, p. 514: "Alias writ. * * * The phrase has been defined as meaning a second writ; a second or further writ which is issued after the first writ has expired, a writ issued where one of the same kind has been issued before in the same cause; a second writ issued when the first has failed its purpose; one which is issued when a former writ has not produced its effect. * * * has been defined as a mere duplicate of an original and a substitute therefor." And, as stated in Black's Law Dictionary (1891 Ed.), p. 58: "An alias writ is a second writ issued in the same cause, where a former writ of the same kind had been issued without effect. In such case, the language of the second writ is, 'We command you, as we have before (sicut alias) commanded you,' * * *." The command contained in the original writ is definite and certain and is the command to which the alias writ must necessarily relate itself.

Since the respondent had failed to comply with the command of the original writ he could not, as of April 27, 1957, enter a nunc pro tunc order on that date as of April 20, 1957, for, as stated in Akins v. Chamberlain, 164 Neb. 428, 82 N. W. 2d 632: "The function of a nunc pro tunc order is not to correct some affirmative action of the court which ought to have been taken, but its purpose is to correct the record which has been made, so that it will truly express the action taken but which through inadvertence or mistake was not truly recorded."

Section 25-2156, R. R. S. 1943, provides: "The writ of mandamus may be issued to an inferior tribunal, corporation, board or person, to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station. Though it may require an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, it

cannot control judicial discretion." See, also, State ex rel. Garton v. Fulton, 118 Neb. 400, 225 N. W. 28.

Appellees contend that no substantial right of the respondent was affected by the writ of mandamus within the meaning of section 25-1902, R. R. S. 1943, and that, consequently, no appealable controversy is presented. We do not agree with this contention if a matter of public interest in the proper administration of the duties of a public office is involved. In such instance we think the public official who is being mandamused in regard thereto has such an interest in the proper administration of the duties of his office that he can appeal therefrom. While we have never directly passed on this question we have, in at least three instances, permitted public officials to do so. See, State ex rel. Garton v. Fulton, *supra* (county judge); State ex rel. Sutton v. Towl, 127 Neb. 848, 257 N. W. 263 (city officials); and Summit Fidelity & Surety Co. v. Nimtz, 158 Neb. 762, 64 N. W. 2d 803 (municipal judges).

It should be understood that this does not apply in matters of a private nature in which the public officer merely seeks to vindicate what he has done in regard thereto. As stated in McCloskey v. Renfro, 47 Ariz. 534, 57 P. 2d 1140: "He has no property or financial interest in the litigation and the way the case was decided is a matter of absolute indifference to him as a presiding judge. The action is between Whiting and Renfro, who are the interested parties. We know of no rule of law that will permit a judge whose judgment is annulled or vacated to become a party to the action and prosecute an appeal. * * * If the superior court erroneously vacated the judgment entered by appellant in the justice court, the party injured thereby may, in a proper proceeding, seek to have the matter reviewed, but not the judge of the court." Although a mandamus action, the court in Bowles v. Dannin, 62 R. I. 36, 2 A. 2d 892, used the same reasoning in reaching the result it did because of the purpose for which it concluded the respondent

therein was appealing. As therein stated: "Essentially, therefore, the appellant's position is the same as if he were defending his decision on an appeal therefrom to the superior court. The fact that he is named as a party respondent in the mandamus petition does not give him a right to appeal." The court then went on to say: "He must be a party aggrieved, either personally or in an official capacity as a representative of the public."

It is further contended by appellees that respondent's compliance with the writ, although involuntary, makes it impossible for this court to grant effective relief on the merits of this case and, since only the question of taxing costs is involved, there is no ground for appellate review.

As to costs they cite Betts v. State ex rel. Jorgensen, 67 Neb. 202, 93 N. W. 167; State ex rel. Hoctor v. Trainor, 91 Neb. 848, 137 N. W. 876. As stated in Dodge Agricultural Credit Assn. v. Tighe, 121 Neb. 458, 237 N. W. 404: " 'Some cases hold that an appeal in a case which has become moot will not be retained merely for the purpose of determining the question of costs.' 4 C. J. 577.

"This view was taken in a former opinion. State v. Trainor, 91 Neb. 848."

As to the question of the issues being moot they cite Betts v. State ex rel. Jorgensen, *supra;* State ex rel. Hoctor v. Trainor, *supra;* McCarter v. Lavery, 101 Neb. 748, 164 N. W. 1054; Banning v. Marsh, 124 Neb. 207, 245 N. W. 775; School Dist. No. 65 v. McQuiston, 163 Neb. 246, 79 N. W. 2d 413. As stated in School Dist. No. 65 v. McQuiston, *supra:* "A defeated party's compliance with the judgment destroys his right to appeal where such compliance makes it impossible for the appellate court to grant him effective relief on the merits."

But, as stated in 5 C. J. S., Appeal and Error, § 1354(1)a, p. 404: "As a general rule, since appellate courts do not sit to give opinions on moot questions or abstract propositions, an appeal or writ of error will be

dismissed where no actual controversy exists between the parties at the time of the hearing. This general rule, however, is subject to some exceptions, as where the question involved is a matter of public interest; * * *." See, also, Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150.

We think the question here involved presents a matter of public interest as it affects all county courts of this state in the proper handling of estates when the deceased dies testate.

Some question is raised by appellees as to the authority of the county judge to make the order and issue the notice that it did when the first petition for probate was filed, citing the requirements of section 30-217, R. R. S. 1943. This statute provides, insofar as here material, that: "When any will shall have been delivered into or deposited in any probate court having jurisdiction of the same, together with a petition for its probate, such court shall appoint a time and place for proving it, when all concerned may appear and contest the probate of the will, and shall cause public notice thereof to be given by publication under an order of such court, in such newspaper printed in this state as the judge shall direct, three weeks successively, and no will shall be proved until notice shall be given as herein provided; * * *." See, also, § 30-331, R. R. S. 1943. It should be remembered that the will was on deposit in the county court when discovered and therefore in its legal custody. See, §§ 30-210, 30-212, 30-214, R. R. S. 1943. The mere fact that relator Coulter had been permitted to take it to his office for personal reasons did not change that status. When the first petition for probate of the will was filed at 11 a.m. on April 18, 1957, to which it related, the will had already been deposited with the county court. The county court thereupon had authority to appoint a time and place for proving it and cause public notice thereof to be given by publication for the length of time as required by

law, the time and place being in its discretion within that limited by the notice required. However the word "shall," as used in this statute, required the county court to enter such order and give the notice provided for. One of the questions here is, can the county court be required to issue additional orders and notices as contemplated by this statute whenever any one authorized to file a petition for that purpose does so after an order for hearing has been entered and a notice thereof has been given?

An estate proceeding is in the nature of a proceeding in rem. See, In re Estate of Sieker, 89 Neb. 216, 131 N. W. 204, 35 L. R. A. N. S. 1058; In re Estate of Sweeney, 94 Neb. 834, 144 N. W. 902; In re Estate of Marsh, 145 Neb. 559, 17 N. W. 2d 471; Rohn v. Kelley, 156 Neb. 463, 56 N. W. 2d 711. When a petition is filed in the county court for the purpose of administering or probating an estate therein the proceedings become one in rem to which everyone interested therein is a party, whether he is named or not. In re Estate of Sweeney, *supra;* In re Estate of Marsh, *supra;* Rohn v. Kelley, *supra.* The filing of such a petition in the county court is in no sense an action within the ordinary meaning of that word. The petition filed is for the benefit of all persons interested therein. It is, in effect, a petition or application directed to the court to put in operation the functions of that office if the petition states the necessary jurisdictional requirements. It is the duty of the court to protect the interests of all parties thereto whether actually before the court or not. See, In re Estate of Marsh, *supra;* In re Estate of Glover, 104 Neb. 151, 175 N. W. 1017. As stated in In re Estate of Glover, *supra:* "The instant the petition is filed the further operation or control of the matter passes out of the hands of the petitioner and into the hands of the court."

No claim is made here, except one that has already been discussed and disposed of, that the first petition

filed for the probate of decedent's will failed to state such jurisdictional requirements.

While we think the entering of an order, after a proper petition to probate a will is filed, fixing a time and place for the hearing thereon is obligatory on the county court in the first instance we are, however, of the opinion that once that has been done, and the court has obtained jurisdiction of all the parties interested therein, that the filing of additional petitions for the same purpose, by others entitled to do so, does not require the county court to issue additional orders to the same effect and cause notices to be issued and published for hearing thereon. Doing so would serve no useful purpose but would unnecessarily hinder, delay, and cause confusion in the proper probating of such estates.

In view of the foregoing we find the district court was in error when it issued the peremptory writ of mandamus against respondent for the purpose that it did. We therefore reverse its action doing so with directions that the relief prayed for by appellees be denied and costs of this proceeding be taxed to appellees.

REVERSED AND REMANDED WITH DIRECTIONS.

YEAGER, J., participating on briefs.